IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

**THEADORA ARMSTEAD,**　　　　　　　}
　　　　　　　　　　　　　　　　　　　}
　　**Plaintiff,**　　　　　　　　　　}
　　　　　　　　　　　　　　　　　　　}　Civil Action No. 6:14-CV-1835-RDP
v.　　　　　　　　　　　　　　　　　　 }
　　　　　　　　　　　　　　　　　　　}
**CAROLYN W. COLVIN,**　　　　　　　 }
**Acting Commissioner of Social Security**　}
　　　　　　　　　　　　　　　　　　　}
　　**Defendant.**　　　　　　　　　　 }

## MEMORANDUM OF DECISION

Plaintiff Theadora Armstead filed this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.   Proceedings Below**

Plaintiff protectively filed her application for disability and DIB on March 21, 2011, and alleged that her disability began on August 7, 2010.[1] (R. 118-21). Plaintiff's initial application was denied June 2, 2011. (R. 50). On July 19, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 54). Plaintiff's request was granted and a hearing was held before ALJ George Merchant on December 5, 2012. (R. 18-49, 73, 82).

---

[1] Plaintiff's representative later amended her disability onset date to January 1, 2011. (R. 20). The onset date was amended as a result of Plaintiff being called in by Greenetrack to do a small amount of work after her original onset date. *Id.*

In the ALJ's decision, dated January 3, 2013, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 404.1520(f) of the Act, since August 7, 2010 (her initial onset date),[2] and had not engaged in substantial gainful activity since January 1, 2011, her amended onset date of disability. (R. 56, 60). The ALJ found that Plaintiff had the following severe impairments: hypertension; lumbar degenerative disc disease; osteoarthritis; obesity; asthma; carpal tunnel syndrome; and lower leg phlebitis. (R. 56-57). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 57). The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with some limitations. *See* 20 C.F.R. § 404.1567(b). The ALJ also concluded that Plaintiff was capable of performing her various past relevant work as an employment interviewer, administrative assistant, and office manager.

Plaintiff requested a review by the Appeals Council on March 8, 2011. The Appeals Council denied review on July 24, 2014. (R. 1-3, 12-13). Following the Appeals Council's denial, the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.     Facts

Plaintiff was 52 years old at the time of the hearing, and had achieved a high school education. (R. 20-21, 182-83). Following graduation from Eutaw High School, Plaintiff claimed she enrolled in some college courses at the Alabama Institute of Business and Walker State College. (R. 21, 182-83). Plaintiff stated that she is able to cook breakfast for herself and to prepare sandwiches, but does not do any major cooking. (R. 33). Plaintiff's daughter handles major shopping for her. (R. 37). Plaintiff further stated that she is able to do small amounts of

---

[2] Despite the amendment to the date of onset, the ALJ still referenced the original onset date in his opinion.

housework, such as washing and ironing a couple of loads of clothes throughout the week. (R. 37). Plaintiff also is able to use the computer on occasion, usually around twice each week. (R. 42). Plaintiff reported difficulties sleeping, claiming she tossed and turned most nights. (R. 38). Plaintiff's grandchildren stay with her approximately four days each week. (R. 22).

During the hearing, Plaintiff testified that she experiences daily pain. (R. 30). Plaintiff claims that her symptoms have gotten worse since she was laid off, stating that she was now unable to work because of back issues, rating the pain as 8-8.5/10. (R. 24, 26-28). She further testified that she was unable to stand longer than fifteen to twenty minutes, and was unable to sit more than fifteen minutes. (R. 28).

Plaintiff's past relevant work included employment as an office manager, administrative assistant, employment service temporary clerk, and a sewing machine operator. (R. 143-150). Plaintiff's most recent job was at Greenetrack, but she was laid off when the State of Alabama shut that business down. (R. 24, 184).

During the hearing, a vocational expert, Renee Smith ("VE"), categorized Plaintiff's past work as employment interviewer, administrative assistant, office manager, and inventory clerk. (R. 43-44). The VE classified Plaintiff's past work as skilled work with the exception of her job as an inventory clerk which he indicated was semi-skilled. (R. 44). The VE testified that Plaintiff would be capable of employment in her capacity as an employment interviewer, administrative assistant, and as office manager, however, would not be able to be employed as an inventory clerk. (R. 45)

Plaintiff received medical care from Dr. Carmella Anderson from January 1994 to August 2009. (R. 196-229). Dr. Anderson conducted an MRI of Plaintiff's lumbar spine in March 2011. (R. 223). This MRI revealed that the lumbar vertebrae were in anatomic

alignment, with a disc bulge at L4-L5 slightly asymmetric to the left, without evidence of neural impingement. (*Id.*). Dr. Anderson's impression was mild degenerative disc disease, without findings strongly suggestive of neural impingement. (*Id.*).

Plaintiff's history of specialized treatment for back problems dates back to 2006, when she began treatment at the SpineCare Center after being referred there by Dr. Anderson. (R. 291-333). Plaintiff first sought treatment at the SpineCare Center in March 2006. (R. 291). Dr. Wesley Spruill, the treating physician at the SpineCare Center, noted that Plaintiff reported a back injury which occurred on March 18, 2006, when she was taking care of her sick brother. (R. 292). Dr. Spruill reported that an MRI of Plaintiff's spine, performed March 27, 2006, was consistent with Dr. Anderson's findings, and showed mild degenerative disc disease, without findings strongly suggestive of neural impingement. (R. 292). Plaintiff received a diagnosis of low back pain, lumbar strain, L4-L5 lumbar degenerative disc disease with mild disc bulging, and failure of conservative treatment. (*Id.*). Plaintiff was given an epidural injection during that visit. (*Id.*).

Plaintiff was treated by Drs. Bobo and Fernandez at the Emergi Care Clinic from January 2007 to November 2010. (R. 243-66). On April 22, 2009, Dr. Bobo conducted an X-Ray of Plaintiff's spine. (R. 262). The X-Ray revealed normal alignment and curvature of the spine. (*Id.*). Again, in April 2009, Plaintiff was seen by Dr. Fernandez regarding her complaints of back pain. (R. 247). Plaintiff reported tenderness in the lumbar area upon palpation. (*Id.*). Dr. Fernandez noted that Plaintiff was able to heel and toe walk. (*Id.*). In November 2010, Dr. Bobo saw Plaintiff with complaints of body pain. (R. 244). Dr. Bobo reported that Plaintiff had no redness or swelling of any joints. (*Id.*). Dr. Bobo further reported that Plaintiff had full range of motion in all of her joints. (*Id.*).

Plaintiff was treated by Dr. Katona from April to August 2010. (R. 230-42). During her initial visit, Plaintiff complained of headache, hypertension, and arthritis. (R. 237). Dr. Katona noted Plaintiff's past medical history (hypertension, menopause, and arthritis), and that she was on blood pressure medication at the time (Enalapril). (*Id.*). Dr. Katona further noted that Plaintiff denied back pain at this visit. (R. 238). Dr. Katona's physical examination revealed that Plaintiff had a full range of motion. (R. 239).

Plaintiff was treated again by Dr. Katona in August 2010. (R. 231-33). Plaintiff presented with complaints of arthritis and foot pain. (R. 231). Dr. Katona conducted another physical examination on Plaintiff, finding again that Plaintiff had full range of motion, with some pain in her right foot. (R. 232).

Beginning in November 2010, Plaintiff sought treatment at Whatley Health Services. (R. 267-72, 345-49, 350-51, 365-71). In August 2011, Plaintiff received a diagnosis of Carpal Tunnel Syndrome. (R. 347).

Dr. Judy Travis conducted a consultative physical examination of Plaintiff on May 23, 2011. (R. 274-25). Dr. Travis noted that Plaintiff had bilateral normal appearance in her arms and legs, grade two reflexes, and range of motion. (R. 275). She found that Plaintiff had normal dexterity in both hands, and that Plaintiff had normal curvature and range of motion in her back and spine, with no spasms, deformity, or tenderness. (R. 275). Plaintiff's gait was found to be normal, and that her tandem walk was also normal. (R. 275).

Plaintiff was a patient at the Greene County Hospital in March 2012 and July 2012. (R. 352-64). In March 2012, she presented with complaints of back pain. (R. 352-53). An X-ray was performed, and Dr. Roland Ng, a radiologist, reported minor scoliosis, along with minor degenerative disc disease. (R. 352). In July 2012, Plaintiff presented with complaints of leg

pain.  (*Id.*).  Nursing notes reported that Plaintiff could move all extremities well.  (R. 358).  Plaintiff's discharge notes noted that Plaintiff was able to ambulate without difficulty.  (R. 360).

In November 2012, Plaintiff reported taking the following medications: for pain – Lyrica, Meloxicam, Celebrex, and Tramadol; for headaches – Loratadine; for asthma – Ventolin; as a muscle relaxer – Cyclobenzaprine; and for hypertension – Enalapril.  (R. 185).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significant limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the

claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

### III.     Plaintiff's Argument for Reversal

Plaintiff presents the following arguments in support of her position that the decision of the ALJ should be reversed. First, Plaintiff argues that the ALJ's decision to reject the credibility of her statements is not based upon substantial evidence. (Pl.'s Mem. 12-18). Second, she contends that the ALJ failed to apply the proper legal standards when considering Plaintiff's pain testimony. (Pl.'s Mem. 18-19). Third, Plaintiff questions whether the ALJ properly considered her receipt of unemployment benefits in deciding her claim. (Pl's Mem. 14-15). Finally, Plaintiff alleges that the ALJ failed to consider the side effects of her medications. (R. 19-20).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847

F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529). While the court acknowledges that judicial review of the ALJ's factual findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After careful review, and for the following reasons, the court concludes that the ALJ's findings are supported by substantial evidence and that proper legal standards were applied in the determination of Plaintiff's disability claim.

**A.     The ALJ's Credibility Determination was Based Upon Substantial Evidence and the ALJ Correctly Applied the Pain Standard**

Plaintiff argues that the ALJ's credibility findings made in assessing her RFC were not supported by substantial evidence. (Pl.'s Mem. 12-13). Plaintiff contends that the ALJ based his credibility determination on the fact that she had continued to work, despite her back problems,

8

which caused her significant pain. (Pl.'s Mem. 12-13). Plaintiff asserts that her pain progressively worsened over time, and became debilitating after she stopped working. (Pl.'s Mem. 13).

In evaluating claims of disability based upon subjective complaints of pain, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ discredits a claimant's subjective testimony regarding pain, he is required to "articulate explicit and adequate reasons" for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

The court concludes that the ALJ satisfied these requirements in rendering his decision. (R. 57-59). After reviewing the record evidence, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her reported symptoms. (R. 58). However, the ALJ determined that the intensity, persistence, and limiting effects of these symptoms would not preclude Plaintiff from performing work activities within the scope of her RFC. (R. 58). The ALJ noted that Plaintiff had continued to work for several years, despite her pre-existing back condition. (R. 58). The ALJ also considered Plaintiff's receipt of unemployment compensation as another factor in determining her credibility. (R. 58). In order to receive unemployment benefits, Plaintiff was required to attest that she was capable of working and actively seeking employment. (R. 58). During the hearing, Plaintiff testified that she had sought work while drawing unemployment benefits. (R. 25).[3]

---

[3] The court addresses below the argument that the ALJ did not properly consider Plaintiff's unemployment benefits claim.

9

The ALJ also relied upon the physical examinations of two treating physicians -- Drs. Katona and Bobo -- in making his credibility determination. (R. 58, 230-42, 243-66). Both of these physicians noted that Plaintiff had full range of motion in all of her joints. (R. 232, 244). Dr. Bobo found that Plaintiff had no redness or swelling of any joints. (R. 244). The ALJ also considered the physical consultative examination conducted by Dr. Travis on May 23, 2011. (R. 273-75). Dr. Travis reported that Plaintiff had normal range of motion with her upper extremities, 5/5 grip bilaterally, normal gait, and that she had normal curvature of the back and spine. (R. 275).

The ALJ also took into consideration Plaintiff's testimony regarding her daily activities. (R. 59). Plaintiff testified that her grandchildren would stay with her four days each week, and that she occasionally used the computer at her residence. (R. 22, 30). Plaintiff stated that she occasionally was able to fix her own meals, such as breakfast or sandwiches, and that she did laundry one to two times per week. (R. 33).

The key issue is whether substantial evidence supports the ALJ's decision to discredit Plaintiff's pain testimony. Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). While Plaintiff alleges that her symptoms have worsened over time, the record evidence does not support that assertion; Plaintiff relies only upon her own testimony; however, the ALJ also considered the findings of Drs. Bobo, Katona, and Travis. The court finds that the ALJ did not commit error by discrediting Plaintiff's pain testimony.

Furthermore, the ALJ did not err by considering Plaintiff's daily activities. As the Eleventh Circuit has held, a claimant cannot be disqualified from disability by simple

"participation in everyday activities of short duration, such as housework or fishing . . . ." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Social Security Regulations provide that daily activities may be *considered* as one factor in a disability determination. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). The ALJ also considered other factors, including the medical evidence of record, in addition to her daily activities. The court finds that the ALJ did not commit any error here.

Plaintiff further asserts that the ALJ misrepresented the medical evidence by "cherry-picking" from the medical evidence certain statements to support his findings and failed to consider her visits to other doctors and clinics for her pain. (Pl.'s Mem. 15-16). Plaintiff bases this assertion on Social Security Ruling ("SSR") 96-7p, which references "[p]ersistent attempts by the individual to obtain relief of pain . . . ." However, SSR 96-7p identifies examples of "persistent attempts" such as taking increased medication, trying various treatments, being referred to a specialist, or changing a treatment source. SSR 96-7p, 1996 WL 374186 at *7. Granted, Plaintiff was referred to and seen by a specialist, and a MRI revealed mild degenerative disc disease, without findings strongly suggestive of neural impingement. (R. 292). But that does not reflect the complete medical record of Plaintiff.

The ALJ's opinion reflects a consideration of Plaintiff's full medical history. The ALJ expressly noted that Plaintiff had been treated by several doctors, including Drs. Katona and Bobo, and that the X-rays of Plaintiff's lumbar spine on April 2, 2012, showed only minor scoliosis and minor degenerative disc disease. (R. 58, 252). Accordingly, the court rejects Plaintiff's argument that the ALJ "cherry-picked" thorough her medical history.

### B. The ALJ Properly Considered Plaintiff's Receipt of Unemployment Benefits in Determining Disability

Plaintiff next argues that the ALJ improperly considered her receipt of unemployment benefits in his credibility determination. (Pl.'s Mem. 14-15). Plaintiff offers a memorandum from Chief Administrative Law Judge Cristaudo (the "Cristaudo Memorandum"), which states that receipt of unemployment benefits does not preclude receipt of Social Security disability benefits, but that an unemployment application is still relevant and may be considered in determining disability. (Pl.'s Mem. 14).

In order to receive unemployment benefits, Plaintiff was required to attest that she was both capable of working *and* actively seeking employment. (R. 58). The Cristaudo Memorandum states:

> [T]he underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits . . . . [T]he fact that a person has, during [] her alleged period of disability, sought employment at jobs with physical demands in excess of the person's alleged limitations would be a relevant factor that an ALJ should take into account, particularly if the ALJ inquired about an explanation for this apparent inconsistency. Accordingly, ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment.

Pl.'s Brief, Doc. 9-2.

The court finds that the ALJ's handling of this issue was consistent with this memorandum and, more importantly, that proper legal standards were applied. The ALJ did not rely solely on Plaintiff's application for unemployment as a basis for discrediting Plaintiff's testimony. The record reflects that the ALJ considered Plaintiff's application for unemployment, along with "all of the medical and other evidence" in reaching this findings.

### C. The ALJ Properly Considered the Effects of Plaintiff's Medication

Plaintiff next argues that the ALJ failed to properly consider the effect of her medications. (Pl.'s Mem. 19-20). The court disagrees. Plaintiff notes that two of her prescribed medications, Cyclobenzaprine and Tramadol, list drowsiness as a "more common" side effect. (Pl.'s Mem. 19). Plaintiff relies on *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981). There, "the [ALJ] should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored." *Id.* at 737 (quoting *Figueroa v. Secretary of HEW*, 585 F.2d 551 (1st Cir. 1978)). But *Cowart* is distinguishable from the facts presented here. In *Cowart*, the ALJ failed to elicit testimony and made no findings regarding the effects of the medication upon the claimant's ability to work. *Id.*

Here, the record reflects that the ALJ did elicit testimony from Plaintiff regarding the side effects of her medication. (R. 34-35, 46-47). Moreover, the ALJ made a finding as to the limiting effects of Plaintiff's symptoms. Specifically, he found that the record did not support Plaintiff's statements regarding the limiting effects of her medications. (R. 58). In *Carter v. Comm'r of Soc. Sec.*, 411 Fed. Appx. 295 (11th Cir. 2011), the Eleventh Circuit held that the ALJ did not err in considering and rejecting the claimant's claim regarding side effects of his medication, noting that the claimant had not complained to the treating physician of any side effects. *Id.* at 297. In this case, the record is devoid of any complaints to physicians of side effects. (R. 267-69, 345-51). The court concludes that the ALJ properly considered the side effects of Plaintiff's medication in reaching a disability determination.

## VI. Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in

reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.

A separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** this December 18, 2015.

                                                  **R. DAVID PROCTOR**
                                                  UNITED STATES DISTRICT JUDGE